MR. JUSTICE CARRIGAN
dissenting:
While I wholeheartedly join in the dissenting opinion by MR. JUSTICE GROVES, I wish respectfully to add several additional reasons why I am convinced the majority opinion is wrong.
Fundamental principles of judicial policy dictate that an appellate court should not decide a constitutional issue if it need not decide such an issue to resolve a case. Alma Motor Company v. Timkin-Detroit Axle Company, 329 U.S. 129, 136, 67 S.Ct. 231, 234, 91 L.Ed. 128, 133 (1946); Mountain States Beet Growers Marketing Association v. Monroe, 84 Colo. 300, 308, 269 P. 886, 888 (1928). Although it is clear that the defendants touched their feet to the stream bed owned by the Ritschards, it is unclear why that contact alone is insufficient to uphold the trespass convictions. If the majority believes that such “footdragging” is an inadequate basis for supporting the trespass convictions, it should say so and say why. But if the touching was a trespass, that violation was ripe for a decision and should have been the only basis for a decision. All of the majority’s assertions about landowners’ rights to water in adjoining streams, therefore, are assertions that amount to dicta. The majority has decided a major constitutional issue of far-ranging implications but, in so doing, has decided an issue that was not ripe for consideration.
The majority reaches deep into the common law of feudal England for the principle it today imposes on modern Colorado. The principle is of such antiquity that the majority has to express it in Latin: “Cujus est *148 solum, ejus est usque ad coelum.”[1]
A long “leap of faith” would be necessary to assume that that ancient rule had been imported into Colorado’s early common law. And an even longer leap would be required to conclude that it was intended to govern the controversy at hand. But even if those leaps were made, it would seem obvious that the people of Colorado, in adopting the state constitution, repealed those principles and set forth the rule that unappropriated waters of Colorado’s natural streams belong to all the people. Colo. Const., Art. XVI, section 5.
Indeed, if “cujus est solum, ejus est usque ad coelum,” is the law in Colorado, the majority opinion creates some serious problems for Colorado. If a landowner, for instance, has the right to all of the air flowing above his or her land, he or she also has the exclusive right to exclude others from trespassing in the airspace. Violators who infringe that airspace may be prosecuted for criminal trespass (as in this case), sued for damages or both. Anyone who floats a balloon, pilots a hang glider, flies a kite or shoots fireworks through another’s airspace, therefore, is subject either to criminal prosecution, civil suit or both. Similarly and presumably, so are the owners and operators of industrial, utility and other plants which spew smoke or pollutants into the airstream and over the property of others.
Here, the “trespassers” were merely making a fleeting, non-consumptive use of the quality of buoyancy inherent in the water. A prosecution for trespass is no more appropriate than would be such a prosecution against one making use of the buoyancy of air, as stated in the above-set-out examples.
In a larger sense, no individual “owns” the beauty or buoyancy of our streams and skies. Each drop of water which, for the moment, is part of a stream, is part of the whole earth. It may at any time evaporate and become part of a cloud. It may be snow in winter, hail in spring, rain in summer and part of a juicy melon in fall. To apply to stream water medieval concepts derived from attempts to define unlimited fee simple title defies both reason and legal history. If we must seek ancient concepts to aid in defining relative rights here, we would do better to consider the American Indians’ views. They believed that all of us are caretakers and conservators of the Earth’s natural beauties for the benefit of future generations. In their scheme, everyone had a right to use the Earth; no one a right to abuse it. That was the law in Colorado when the English feudal courts adopted the rule “Cujus est solum, ejus est usque ad coelum.” It would be a sounder precedent for this case.
*149 The majority opinion dramatically alters the law of Colorado as it has been perceived by the many boaters, rafters and tubers who for years have sought rest, recreation and relaxation on our beautiful streams and rivers. As our population grows, so grows the need for surcease from the cares and concerns of city dwelling. Those who in our state constitution dedicated our natural streams “to the use of the people of the state . . . .” were not elitists. Colo. Const., Art. XVI, section 5. They did not reserve the enjoyment of these great natural resources to the few. Nor did they exclude from such pleasures all but the few who owned land on stream banks. If the recreational use of streams was not among those uses for which streams were reserved to the public, it is impossible to conceive what uses were contemplated and reserved by the constitution.
The Colorado Supreme Court, in rejuvenating the ancient principle of “cujus est solum, ejus est usque ad coelum,” has embraced a doctrine which the United States Supreme Court long ago abandoned as obsolete. In 1946, the United States Supreme Court concluded that the doctrine, which the majority opinion today adopts, had “no place in a modern world.” United States v. Causby, 328 U.S. 256, 261, 66 S.Ct. 1062, 1065, 90 L.Ed. 1206, 1210 (1946). That court’s reasoning more than thirty years ago that “[cjommon sense revolts at the idea, ...” has lost none of its persuasive power with the passage of time. Id.
The majority opinion expressly acknowledges that “it is within the competence of the General Assembly to modify rules of common law within constitutional parameters.” Judicial self-restraint also requires that such a policy change be left to the elected representatives of the People, the General Assembly. Clear evidence that the legislature did not intend water flowing in a stream to be subject to trespass is apparent in its listing of real property interests which may be subject to trespass. Section 18-4-504.5, C.R.S. 1973 (1978 Repl. Vol. 8). Although “stream banks and beds” are included on the list, water in the streams is excluded from it.
If it were left to the legislature to determine whether the owner of land also was the owner of water in an adjoining stream, more opportunity would exist for practical compromise. If public use of streams for floating were to be allowed, the legislature could, by regulations and licensing, protect the privacy and property rights of adjoining landowners while preserving reasonable recreational access to waterways, thus balancing the competing interests in a manner impossible for a court reacting to appeal of a treaspass conviction.
Ironically the majority opinion, while implying that the General Assembly is competent to change the rule adopted today, has complicated the prospects of having the rule changed in the future. The Court has painted the state into a corner, and its brushwork assures that any effort to alter the rule will be difficult and expensive. The Court, by creating a vested property right in stream water (with the concomitant right to *150 exclude all others from that water), has created a valuable property interest. And the General Assembly, therefore, cannot give the public recreational access to rivers without taking away from landowners their newly recognized property interests and paying them “just compensation.” U. S. Const., Amendment V; Colo. Const., Art. II, section 15.
It is difficult to imagine a more stark contrast than the disparity between the result which the majority reaches and the language and spirit of Article XIV, section 5, (“The water of every natural stream, not heretofore appropriated, within the State of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the People of the State, subject to appropriation as hereinafter provided.” (Emphasis added)).
Eleven states west of the Mississippi River have recognized the right of public or non-owners’ use of waters in river beds which are privately owned. Such rights are flourishing in California, Idaho, Iowa, Minnesota, Missouri, New Mexico, Oregon, South Dakota, Texas, Washington, and Wyoming. See Johnson and Austin, Recreational Rights and Titles to Beds on Western Lakes and Streams, 1 Natural Resources Journal 1, 38-40 (1967). See also Note, Water Recreation — Public Use of “Private Waters,” 52 Calif. L. Rev. 171 (1964). But those rights now appear to be foundering in Colorado.
As stated above, I would decide this case on narrow, non-constitutional grounds and leave the policy issues to the General Assembly.

 He who owns the surface of the ground has the exclusive right to everything which is above it.